# J. RIBAS é HIJO, Plaintiff,

*v.*

# UNITED STATES, Defendant.

---

### OPINION.

1. The *strictum jus* is that private movable property on land of an enemy is liable to seizure; this was the former custom, but the modern usage, with some exceptions, is to exempt it.

2. It is, however, a rule of international law that the private property of an enemy may be taken and used if necessary, by the war power, without compensation to the owner.

April 8, 1901.

---

*Mr. C. M. Boerman,* attorney for plaintiffs.

*Mr. N. B. K. Pettingill,* District Attorney, for defendant.

HOLT, Judge, delivered the following opinion:

This is an action for $10,000 for the use of a vessel named "Paz," for the storage of coal for twelve months and two weeks, to wit from July 26, 1898, to August 12th 1899. The declaration avers that the use was by the quartermaster's department of the Army. The answer admits the alleged use from July, 1898, to May, 1899, but denies liability upon the ground that the vessel was enemy's property, and was so seized by the military forces of the United States.

Ribas é Hijo v. United States.

From the admissions in the pleadings and the evidence, these facts appear, to wit:

That the plaintiff in July, 1898, was either a Spanish corporation or a firm composed of Spanish subjects, and owned The Paz, which was a merchant vessel and was in the port of Ponce when that city was captured by the United States Army and Navy on July 26, 1898, and it was then taken for the use of the quartermaster's department. It was so used until in April, 1899, when the War Department ordered its return to the owner if all claim for use or damage for detention was waived. This conditional return was refused by the captain, who claimed to be a part owner, and who, with his crew, left the vessel.

There is also evidence tending to show that sometime after this, and probably in April, 1899, the consignees of the vessel were notified that it was at their disposal, and that the government authorities were about to discharge those in care of it, and they were requested to put someone in charge; but they declined to do so, and the vessel was abandoned. In the hurricane following, of August, 1899, it was wrecked.

It was never in naval custody, and no steps were ever taken to condemn it as a prize. It was, however, when seized, a Spanish vessel; it floated the Spanish flag; its captain and crew were Spanish subjects, as was also its owner. It did not come within any of the declared exemptions from seizure set forth in the proclamation of the President of the United States of April 26th, 1898, and a claim filed in the War Department in February, 1900, by the plaintiffs, for its use and value, was rejected.

From this finding of facts these legal conclusions are reached, to wit:

The United States being at war with Spain when this seizure

was made, every individual of the one country was in legal
hostility to every individual of the other, and all of the prop-
erty of the one belligerent was to be considered as hostile as to
the other.   The Congress of the United States had, by its act
of April 25th, 1898, declared that war existed from April 21st,
1898, and when this vessel was seized it was enemy's property,
and as such liable to capture.   Property may be hostile and
liable to seizure in war from its character; it may be contra-
band, but generally the character of property follows the char-
acter of its owner.   It is hostile if he be hostile.   It is true, this
vessel was private property, and not being used for hostile pur-
poses.   It was not a legitimate subject of capture by reason of
any peculiarity of its own, but it was, nevertheless, the prop-
erty of the enemy, and as such liable to be seized and used to
carry on the war and meet its expense, just as troops in the
enemy's country may be subsisted by forced requisitions.   Hal-
leck, International Law, p. 356.

The former and stern rule was that anything might be done
by a belligerent to weaken his adversary, and it has been rigor-
ously urged by some distinguished writers upon the subject that
this should be the rule because such is the object of war; but
in recent years the rule has been so far modified that generally
the property of noncombatants upon land is not liable to be
seized as booty, nor is pillage permissible; and our own govern-
ment has upon several occasions tried to embody in the law of
nations the exemption from capture of all private property upon
land, not contraband, and also merchant vessels; but this policy
has not met with general acceptance by the civilized nations
of the world.

It may properly be said that as an abstract right, as the
*strictum jus,* private movable property on land of an enemy is

subject to seizure, and this was the former custom; but the modern usage is, with some exceptions, to exempt it.

The case in hand, however, is the use of an enemy's property by the war power for war purposes. In the language of an eminent publicist, it is one of those "special cases dictated by the necessary operation of war." Mrs. Alexander's Cotton (United States v. Alexander) 2 Wall. 404, 17 L. ed. 915. It is like the using temporarily, for war purposes, buildings or lands of the enemy in invaded territory. There is no constitutional limitation of the war power; and while international law limits the subjects of capture, yet as to the necessity for it, or for use of the enemy's property, the war power must, to some extent, necessarily judge. Individual hardship may result; it always does from war; but the province of the court is not to make, but to declare, the law; and the conclusion is that no relief can be granted.

It is therefore ordered that this action be dismissed at the cost of the plaintiff.

Affirmed by the Supreme Court of the United States, May 16, 1904. 194 U. S. 315, 48 L. ed. 994, 24 Sup. Ct. Rep. 727.